Good morning. My name is Norm Pettis. I'm here on behalf of the appellant. I'd like to begin with the third issue. We think the trial court abused its discretion in dismissing with prejudice. In his decision, the judge concluded, and this is at the Appendix 136, that because the plaintiff had already amended the complaint once, and after two attempts had failed to state a claim, therefore, dismissal with prejudice was warranted. I don't need to remind the court that 15A gives liberal leave to grant amendments in the interest of justice. And if you look at the two complaints, they're both wrong. I call this complaint the dark side of Iqbal. No one's ever going to accuse the drafter of the complaint of not pleading sufficient facts. Maybe too many. Maybe this story got lost in the weed. But if you look at all 236 paragraphs of the complaint, they're all identical. Both complaints were filed. They're the first and second docket entry. Both were filed on February 10, 2016. The only difference, and I'm not saying the only material difference, I'm saying the only difference between the two complaints is in the caption or subheading to count five, identifying the parties. I was not served, but I could have easily made the error. I don't want to blame somebody else. I'll take responsibility for my file. But I think what had happened is, and that was to add T.D. Bank in the second complaint. And if you look at the complaint, it's well pled. T.D. Bank is listed as a party there. I think somebody's looked at it post-filing and said, wow, there's going to be a claim there amended. That's the only amendment. And so, you know, in cases where I've had pleading difficulties, the practice in the District of Connecticut at least has been to dismiss without prejudice with leave to file an amended complaint within some period if there's something that I could conceivably correct. Now, our adversaries take the position in briefing here that even if we were given permission to amend, we would have failed. I'm not sure that's right, and I'll turn now to the first and second count because I think the district court got it wrong on the merits. What would you correct in the pleading? I'd probably cut it in half. For example, you've noticed a tremendous amount of language about the State Department of Education and various credentialing issues. There is a separate and distinct state court action there. I'm not involved in that, but I've reviewed the pleadings in anticipation of this argument. And it appears to me that counsel may have thrown the kitchen sink in here and would have been ---- Is the action still pending? Yes. As to the State Department of Education, it's pending in state court. It's only state statutory claims. But I think what got lost in the weeds here were the following, and these were factors that the district court did not address in its motion. And I've got citations to the joint appendix. For example, in some of the checks that were alleged to be larcenous, there are on the memo lines indications what they were used for, and this is in paragraph 77 and 78 of the complaint, the joint appendix beginning at 71. Also, there was a claim made that certain monies were spent when she wasn't on school premises. Deleted from the court's analysis is the fact that she was a summer coordinator during the relevant time period. That's at paragraph 79, joint appendix 72. There were claims that various personal items could not conceivably be used for school expenses, such as kitty litter, cookbooks, and fitness magazines. However, as the complaint made clear, those were never paid for with school funds. Those were personal funds. That's in paragraph 81 of joint appendix 72. But perhaps most shocking of all is the contention that she somehow diverted $3,100 of school funds to a liquor store, the so-called M&R entry. Upon inquiry, it turned out that M&R was a fundraising organization. Wouldn't it be enough if there was a diversion of about $1,000 for a pair of a private automobile? It may or it may not. And the television set and the other home electronics that were in her home until they were eventually moved to the school? It may or it may not. And here's where I would encourage you to consider this case through the prism of 404B. And you're saying, how do I do that? Typically, when you bring a claim to a court, you try the merits of the individual claim. And a trier of fact here is all that's relevant and material to that. And we keep out propensity evidence on grounds that it might lower the threshold of proof for the move on. If you think poorly of a person in other regards, you'll think poor in all regards. We found fault with the district court analysis here for not identifying the elements of larceny under Connecticut General Statute 53A.123. And the principal reason for that was one of the purposes of that, one of the elements is the intent permanently to deprive a person of use. She gave an explanation, and it's in the warrant, and you see the district court and my adversary refer to it, that she'd made a mistake. With respect to the school, the car funds, the checkbooks were the same. And then there's a suggestion she may have tried to bribe somebody to change their story. I don't know what to do with that. I'll take that on the face of the pleadings. But then with respect to some of the other, the television and the cameras, she said her son had it at home, teaching her how to use it. Now, the trial court and I think my adversary said, well, those are kind of rich. But are those claims diminished because of the 404B effect of all the other mistakes that were made? And so when this court looks at a warrant under Galeno and asks about whether an affiant knowingly made material or recklessly made material misstatements, in fact, this becomes material. What's more, to my mind, my wife says to me, what are you getting up so early today for? I said, I've got to go to New York to argue a case, what it's about. I try to tell her, what sticks in your mind about this case? She's taking money for a PTO when the PTO doesn't even exist. If ever there were a sham entity, that's it. But absent from the district court decision. The thing was it doesn't legally exist. Well, but it came down to the same thing, that it had no legal status and therefore could not be the bona fide recipient of legitimate funds. But absent from the district court's decision is any discussion of the use of school activity funds. And this is in paragraphs 128 through 130 of the complaint, the joint appendix at 81. This was a small district, and other districts took similar monies, put them through their school activity funds. She used the PTO. She was not running a rogue corporation or entity to enrich herself. And so we don't see any of that in the district court analysis. And we think that had it been included in that analysis, there would be a different outcome. On the question of an amendment, if I were given the opportunity to amend, I'd bring it in at less than 100 paragraphs. I'd probably leave 126 on the cutting room floor and focus on what was significant, what we argued here. Finally, if I may just make one more statement. As to the malicious prosecution counts, as to the individual defendants, that sounds entirely in their awareness of the school activity funds and their claiming that the PTO was a bogus organization. So we think there is enough to get it to discovery and we'd urge the court to reverse. Thank you. You've reserved three minutes for rebuttal.  We'll hear you then. May it please the Court. My name is Joseph Mangachi and I represent the appellees in this particular matter. First, addressing what counsel started with, with the abuse of discretion. Looking at that complaint and looking at the material facts that Judge Bolden viewed in terms of his determination in this case, there could be nothing added in an amendment that would change the material facts which the court had before it and which the magistrate judge had before him when the affidavit was submitted for the arrest warrant. Now, the fact that we have a situation here and we get to probable cause, the failure of probable cause is a failure of both claims for false arrest and for malicious prosecution. Judge Bolden pointed out, rightfully so, that where you have an arrest warrant signed by a neutral magistrate, then the presumption is that there was probable cause. And it would take a showing by the plaintiff in this particular case that there were material misrepresentations. That's what he has undertaken to do. I'm sorry? That's what your adversary has undertaken to do, that there are material misrepresentations, including it sounds to me like the major thing is that this organization really didn't exist and it's just sort of an ad hoc bundle of money for her to steal. I would agree with that, Your Honor. What the record reflects is that the plaintiff established some organization known as the Hopeville School PTO. We have no idea what legal entity it was. Was it a partnership? Was it a corporation? It could be an unincorporated association. What is any PTA? Well, it's more than one person. And in this case, it was only Ms. Mothra. And that's undisputed. She controlled the funds. She was the sole signatory on the account. Where did the funds come from? The funds came from organizational activities that were held at the school. That's my understanding. And also the record will reflect that she was given a certain amount of money. I believe it was 50 cents per person from the school district for certain activities at her school that she commingled with funds under the PTO account. In other words, she should have, and the record will reflect this, she should have taken that money that she was given from the city and used it for functions as the principal of the school. Instead, she commingled it with the funds for the PTO. So in this particular situation, what she did is she took an account with her as the sole signatory, used those funds, and as Judge Bolden pointed out, as far as undisputed facts are concerned, there's no question that she bought the TV and kept it at her house. There's no question. I'm sorry? How long? That, the record doesn't reflect how long she had it. We only know that she returned it after the investigation began with an excuse that it was being held at her home so that her son could train her in the use of that particular television set. And the affidavit points out that the IT department at the city trains people so that there basically was no need for her to take a piece of equipment not belonging to her, take it to her home, and use it ostensibly to be trained by her son. Yes, sir? This was a motion to dismiss, but it was a motion to dismiss her action, right? Correct. How do these, how do the facts that you're now talking about, how do they get into the motion to dismiss on this action by her against the… They were either in the complaint themselves or in documents of which the plaintiff had participated in the creation of those documents as part of the record. They were, I'm trying to think offhand exactly what it was, but it was more than what was just in the complaint. Were they appended to the complaint? I'm sorry, Your Honor? Were they appended to the complaint? They were submitted as part of the motion for summary judgment. They were, I'm sorry? I thought it was a motion to dismiss. I'm sorry, part of the motion to dismiss, Your Honor. They were submitted as part of the motion to dismiss that Judge Bolden had before him. Why were they not outside of the pleadings? Because they were documents that the plaintiff had either been a part of or knew of so that there was no dispute as to those documents. But is that the test of what documents can be accessed in the context of a motion under 12b6 or 13c? I know that there is authority for the fact that if the plaintiff has been a participant in certain undisputed documents or they're annexed to the complaint, that that can be used in a motion to dismiss. And that was what was done here. I believe that the record will reflect that in the motions that were filed. Was there a challenge to the consideration of those documents? No, sir. There was not. So our position simply is that Judge Bolden clearly had a set of undisputed facts upon which he concluded that there was sufficient probable cause for the issuance of the arrest warrant and sufficient probable cause with regard to any claim for malicious prosecution. Judge Bolden? What do you do with the claim that the school defendants fed falsehoods to the police that the police could reasonably rely upon but that even if there was probable cause, it was ginned up by her colleagues? Well, first of all, the police officers are separate from the Board of Education employees, teachers, principal, et cetera. But Judge Bolden didn't rely on any of that information. In his decision, he's very clear that he relies on undisputed facts. And those issues with regard to alleged falsehoods being communicated from the education people to the police people were not considered by Judge Bolden when he made his determination that there was probable cause here. So in terms of plaintiff's argument about the corrected affidavit document, those so-called falsehoods were not part of Judge Bolden's analysis, and it's clear from his decision that he relied on a set of undisputed facts, which specifically related to the conduct of Ms. Malthrup with regard to the use of this account, the payments that she made out of that account, and the suspicions that one would reasonably infer from conduct that Ms. Malthrup engaged in, such as writing a check for repairs for her personal car and then after the check bounced saying, well, I made it from the wrong account, and then purportedly going in. There's an affidavit that was filed by an individual who was at the car dealership at that particular point in time where Ms. Malthrup went in to try to convince them that they were aware that she had written it out of an incorrect check, and the affidavit of that person says she had two $100 bills in her hand in an effort to, this person perceived, in an effort to bribe her and persuade her that she had, in fact, made a payment out of this account erroneously. So Judge Bolden relied upon all of those facts in concluding that there was probable cause for the arrest in this case. And were those $200 bills in the affidavit? Yes, sir. So in conclusion, I notice my time is running out, but in conclusion, we feel that Judge Bolden was totally correct in having concluded that there was sufficient probable cause for the arrest of Ms. Malthrup, and therefore there would be no cause of action for false arrest or for malicious prosecution. And as I indicated initially, the amendment of the complaint would not change the material facts upon which Judge Bolden relied. So no matter what counsel would do in terms of streamlining it or whatever, that doesn't add any facts to it. All that does is make a lengthy complaint shorter. It doesn't do anything to say here's a material fact that I can now plead that I couldn't plead at the time that this motion to dismiss was granted. No such proposition has been offered by the plaintiff in this case. Thank you. Thank you, Your Honor. I don't need to remind this Court that there is a legally significant difference between reasonable suspicion and probable cause. Just how to parse that line, I think, is difficult on an applied basis. But we find fault with the district court's analysis because of what my adversary concedes. Judge Bolden didn't consider all the falsehoods in the warrant, in the warrant affidavit. Now, Judge Parker, you raised questions about items otherwise considered. I think that one of the real-world litigation problems in this case is that underlying civil counsel also tried to success the criminal case and was intimately familiar with the record and may not have litigated the case the way someone else who was new to it. You know, she could have stood on things. But I think in her view, there were things she'd seen in days of evidence and things she knew, and there was no point in disputing them. So there's a little bit more before the Court here than there might be. And there was no objection to the Court considering that. But given what the Court— If it did, it did so dormantly. And I think my adversary's argument is it comes out to the same thing. But I don't think it did. I don't think it did explicitly by saying, look, these are the falsehoods. And when I consider the falsehoods against the things against which there's no dispute, there are questions in my mind about— What do you mean by dormantly? Unstated. In other words, I don't recall in the Court's decision, I'm going to apply this analysis and these are the checklists and so forth. So I didn't mean to create a stir there. So I don't think it was an adequate job of that. And we would ask that the district court consider this because one of the things you'll take away from this case is the nonexistent PTO. And then my adversary stands up, and he's a great lawyer. I was thrilled to see him. But he's talking about commingling funds. I'm thinking of trust funds. We're talking about 50 cents on the student's head in bake sale money in a PTO at a principal at a local school. What's the nature of the legal entity? This was a pass-through, and the board employees knew it. This was the entity that her school activity funds went through. And what they did was they played law with the police officers. This isn't incorporated. And what did the officers do? They went online to check what a PTO is rather than asking people who should know. So, you know, are there mixed questions of law and fact here? We think there are. We think the case is jury worthy or, in the alternative, at least discovery worthy. I'll accept the challenge Mr. Mangachi lays down. He says, are there additional facts that you can put in there? I don't know. I haven't had discovery. Give me discovery and we'll see. Thank you. Thank you. Thank you both. We'll reserve decision.